1  PETER B. MORRISON (Bar No. 230148)
   peter.morrison@skadden.com
2  DOUGLAS A. SMITH (Bar No. 290598)
   douglas.smith@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
4  Los Angeles, California 90071-3144
   Telephone:  (213) 687-5000
5  Facsimile:  (213) 687-5600

6  Attorneys for Defendant American Apparel, Inc.

7  ERIC LANDAU (Bar No. 138849)
   elandau@jonesday.com
8  TRAVIS BIFFAR (Bar No. 217593)
   tbiffar@jonesday.com
9  JONES DAY
10 3161 Michelson Drive, Suite 800
   Irvine, California 92612
11 Telephone:  (949) 851-3939
   Facsimile:  (949) 553-7539
12

13 Attorneys for the Individual Defendants.

14               UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

17 JAN WILLEM HUBNER and ERIC          )   Case No. 15-2965
   RIBNER,                            )
18                                     )   **DEFENDANTS' OPPOSITION TO**
                          Plaintiffs,  )   **PLAINTIFFS' MOTION FOR**
19                                     )   **PRELIMINARY INJUNCTION**
          v.                           )
20                                     )
   ALLAN MAYER, DAVID                  )
21 DANZIGER, ROBERT GREENE,           )
   MARVIN IGELMAN, WILLIAM            )   Hon. Michael W. Fitzgerald
22 MAUER, and AMERICAN APPAREL,       )
   INC.,                              )
23                                     )   Date:        June 1, 2015
                          Defendants   )   Time:        10 a.m.
24                                     )   Courtroom:   1600
                                       )
25                                     )

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ ii

I.    INTRODUCTION ..................................................................1

II.   FACTUAL BACKGROUND ....................................................3

 A.   The Audit Committee Investigation & 2014 Proxy Statement ............3

 B.   Charney's Suspension and Termination ...............................3

 C.   Plaintiffs' 11-Month Delay in Seeking Injunctive Relief ...................5

III.  BASIC THRESHOLD ISSUES PREVENT THE COURT FROM GRANTING THE INJUNCTIVE RELIEF PLAINTIFFS REQUEST .........6

 A.   Plaintiffs' Requested Injunctions Must Not Be Granted Because the "Eggs Are Irretrievably Scrambled" Due to Delay ..............................6

 B.   Plaintiffs Improperly Request A Mandatory, Final Injunction To Remedy Past Harm, Not A Preliminary Injunction To Maintain The Status Quo ...........................................................11

IV.   PLAINTIFFS DO NOT MEET THE STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF............................................13

 A.   Plaintiffs Will Not Suffer Irreparable Harm ......................................13

 B.   Plaintiffs Cannot Show a Likelihood of Success on the Merits .........15

  1.   Plaintiffs' Section 14(a) and 20(a) Claims Must Be Dismissed Because They Do Not Allege Any Economic Loss .................15

  2.   The Proxy Statement Did Not Contain Any Misrepresentations or Omissions.................................................16

  3.   The Proxy Solicitation Was Not an "Essential Link" in the Board's Decision To Suspend Charney...................................19

  4.   Plaintiffs' Claims for Fiduciary Duty Breaches Fail................20

  5.   Plaintiffs Lack Standing........................................21

 C.   The Balance of the Equities Weighs Against an Injunction and an Injunction Would Not Be in the Public Interest...................................23

V.    CONCLUSION ..................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Allergan Inc. v. Valeant Pharmaceuticals International Inc.,
    No. SACV 14-1214 DOC(ANx),
    2014 WL 5604539 (C.D. Cal. Nov. 4, 2014)........................................12

Anderson v. United States,
    612 F.2d 1112 (9th Cir. 1980)........................................................11

In re Answers Corp. Shareholders Litigation,
    C.A. No. 6170-VCN,
    2011 WL 1366780 (Del. Ch. Apr. 11, 2011) ....................................15

Apache Survival Coalition v. United States,
    118 F.3d 663 (9th Cir. 1997)..........................................................7

Basic Inc. v. Levinson,
    485 U.S. 224 (1988)......................................................................18

Bender v. Jordan,
    439 F. Supp. 2d 139 (D.D.C. 2006)...............................................12

In re BioClinica, Inc. Shareholder Litigation,
    No. 8272-VCG,
    2013 WL 5631233 (Del. Ch. Oct. 16, 2013) ..............................20, 21

Boldface Licensing & Branding v. By Lee Tillett, Inc.,
    940 F. Supp. 2d 1178 (C.D. Cal. 2013) .........................................15

Bolger v. First State Financial Services,
    759 F. Supp. 182 (D.N.J. 1991) ....................................................18

C & J Energy Services., Inc. v. City of Miami General  Employees & Sanitation
    Employees Retirement Trust,
    107 A.3d 1049 (Del. 2014) ...........................................................13

Calamore v. Juniper Networks Inc.,
    No. 07-01772MJJ,
    2007 WL 1100313 (N.D. Cal. Apr. 12, 2007) ................................12

Calamore v. Juniper Networks, Inc.,
    364 F. App'x 370 (9th Cir. 2010) ..............................7, 8, 10, 12, 21

Califano v. Yamasaki,
    442 U.S. 682 (1979).....................................................................10

Caribbean Marine Services Co. v. Baldrige,
    844 F.2d 668 (9th Cir. 1988).........................................................13

Conte v. Transglobal Assets,
    No. 2:12-CV-01005-KJD,
    2012 WL 4092717 (D. Nev. Sept. 17, 2012) .................................12

*Copeland v. Lane*,
   No. 5:11-cv-01058 EJD,
   2012 WL 4845636 (N.D. Cal. Oct. 10, 2012) ................................ 7, 10, 21

*Copeland v. Lane*,
   No. 5:11-cv-01058 EJD,
   2013 WL 1899741 (N.D. Cal. May 6, 2013) ................................ 7, 10

*De Maison v. ClairNet, Ltd.*,
   No. EDCV 13-00481-VAP (SPx),
   2013 WL 1855799 (C.D. Cal. Apr. 30, 2013) ................................ 23

*Delarosa v. Boiron, Inc.*,
   No. 10-1569-JST CWX,
   2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) ................................ 12

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ................................ 16

*In re Digex Inc. Shareholders Litigation*,
   789 A.2d 1176 (Del. Ch. 2000) ................................ 12

*Dixon v. Cost Plus*,
   No. 12-CV-02721-LHK,
   2012 WL 2499931 (N.D. Cal. June 27, 2012) ................................ 15

*Emerson Radio Corp. v. International Jensen Inc.*,
   No. 14992,
   1996 WL 483086 (Del. Ch. Aug. 20, 1996) ................................ 22

*Feldman v. Cutaia*,
   956 A.2d 644 (Del. Ch. 2007),
   *aff'd*, 951 A.2d 727 (Del. 2008) ................................ 22

*In re General Motors (Hughes) Shareholders Litigation*,
   No. 20269-NC,
   2003 WL 26474920 (Del. Ch. Oct. 2, 2003) ................................ 2, 6

*Greenwald v. Batterson*,
   No. 16475,
   1999 WL 596276 (Del. Ch. July 26, 1999) ................................ 21

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................ 18

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ................................ 13

*Hoch v. Alexander*,
   No. 11-217,
   2011 WL 2633722 (D. Del. July 1, 2011) ................................ 16

*In re J.P. Morgan Chase & Co. Shareholder Litigation.*,
   906 A.2d 808 (Del.Ch. 2005),
   *aff'd*, 906 A.2d 766 (Del. 2006) ................................ 7, 12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Kass v. Arden-Mayfair, Inc.*,
    431 F. Supp. 1037 (C.D. Cal. 1977) ..................................................12

*Khanna v. McMinn*,
    No. Civ. A., 20545-NC,
    2006 WL 1388744 (Del. Ch. May 9, 2006) ...................................2, 7

*Krieger v. Atheros Communications, Inc.*,
    No. 11-CV-00640-LHK,
    2012 WL 1933559 (May 29, 2012) ..................................................16

*LGS Architects, Inc. v. Concordia Homes of Nevada*,
    434 F.3d 1150 (9th Cir. 2006), effectively overruled on other grounds by
    Perfect 10, Inc. v. Google, Inc. 653 F.3d 976 (9th Cir. 2011) ..........11, 13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GMBH*,
    571 F.3d 873 (9th Cir. 2009)............................................................11

*Masters v. Avanir Pharmaceuticals, Inc.*,
    996 F. Supp. 2d 872 (C.D. Cal. 2014) ....................................13, 17, 19

*Mieuli v. Debartolon*,
    No. C-00-3225 JCJ,
    2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ...................................22

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970)..........................................................................12

*MONY Group, Inc. v. Highfields Capital Management, L.P.*,
    368 F.3d 138 (2d Cir. 2004)..............................................................12

*Munaf v. Geren*,
    553 U.S. 674 (2008)............................................................................6

*New York City Employees' Retirement Systems. v. Jobs*,
    593 F.3d 1018 (9th Cir. 2010)....................................................15, 16

*Oakland Tribune, Inc. v. Chronicle Publishing Co.*,
    762 F.2d 1374 (9th Cir. 1985)..........................................................15

*In re Orchard Enterprises, Inc.*,
    88 A.3d 1 (Del. Ch. 2014).................................................................21

*Pfeffer v. Redstone*,
    965 A.2d 676 (Del. 2009) .................................................................17

*Quinn v. Anvil Corp.*,
    620 F.3d 1005 (9th Cir. 2010)..........................................................22

*Red Oak Fund, L.P. v. Digirad Corp.*,
    C.A. No. 8559-VCN,
    2013 WL 5740103 (Del. Ch. Oct. 23, 2013) ...................................21

*Resnik v. Woertz*,
    774 F. Supp. 2d 614 (D. Del. 2011) ............................................16, 17

Richards v. Ernst & Young, LLP,
   No. 11-17530 (9th Cir. Dec. 9, 2013)....................................................22

St. Louis Police Retirement Systems v. Severson,
   C.A. No. 12-CV-5086 YGR,
   2012 WL 5270125 (N.D. Cal. Oct. 23, 2012)........................................12

Stroud v. Grace,
   606 A.2d 75 (Del. 1992) ...............................................................17, 21

Strougo v. Hollander,
   111 A3.d 590 (Del. Ch. 2015)........................................................23

TSC Industries, Inc. v. Northway, Inc.,
   426 U.S. 438 (1976)........................................................................17

In re Tyson Foods, Inc.,
   919 A.2d 563 (Del. Ch. 2007) ........................................................10

Villegal v. Schulteis,
   No. 1:09-cv-00493-AWI-SKP PC,
   2010 WL 3341888 (E.D. Cal. Aug. 25, 2010),
   adopted by 2010 WL 4723058 (E.D. Cal. Nov. 15, 2010)......................11

Western District Council of Lumber Productions & Industrial Workers  v. Louisiana
   Pacific Corp.,
   892 F.2d 1412 (9th Cir. 1989)....................................................24, 25

Wang v. Silver Wing Chinese Restaurant,
   No. 5:05 CV 4119 RS,
   2009 WL 1033440 (N.D. Cal. Apr. 16, 2009)....................................25

Winter v. Natural Resources Defense Council, Inc.,
   555 U.S. 7 (2008)..............................................................................13

Zepeda v. INS,
   753 F.2d 719 (9th Cir. 1985)..........................................................24

STATUTES

15 U.S.C. § 78n ............................................................................15

Del. Code Ann. tit. 8, § 213 ...............................................................8

RULES

Fed. R. Civ. P. 23.1........................................................................23

Fed. R. Civ. P. 65(c) .......................................................................26

REGULATIONS

17 C.F.R. § 229.407........................................................................17

17 C.F.R. § 240.14a-9......................................................................15

**OTHER AUTHORITIES**

Leo E. Strine, Jr., Can We Do Better by Ordinary Investors? A Pragmatic Reaction
    to the Dueling Ideological Mythologists of Corporate Law,
    114 Colum. L. Rev. 449 (2014)............................................................................23

## I.    **INTRODUCTION**

The Court should summarily deny Plaintiffs' ill-conceived motion seeking to enjoin American Apparel's 2015 annual shareholder meeting, require corrected 2014 proxy statements, and force a re-vote of the 2014 election of three directors.  At its core, Plaintiffs' motion is a transparent effort to manufacture a disclosure claim so Plaintiffs can use this Court to assist founder and former CEO Dov Charney in regaining control of the company through the courts rather than the capital markets.  Unable to wrest control of the company by acquiring shares or forming alliances, Charney now has his surrogates asking the Court to help return him to power by creating the opportunity for him to pack the board with members swearing allegiance to Charney *individually*, as opposed to properly discharging their fiduciary duties *to the company*.  But Plaintiffs may not ask this Court for such *equitable* relief after the company terminated Charney *for cause* and Charney *contractually disabled himself* from seeking such relief when he executed the "Nomination, Standstill, and Support Agreement" (the "Standstill Agreement"), which prohibits him from "seek[ing] the removal of any member of the Board" and from serving on the board.  Charney simply may not pretend his troubling behavior never occurred, much less violate his promise in the Standstill Agreement to actually "standstill."[1]

Charney's *belated* choice to shift his takeover attempt from the capital markets to the courts has dispositive legal consequences.  The alleged "facts" for Plaintiffs' disclosure claims were known as of June 18, 2014 – *almost one year ago* – the date on which the board announced that it had suspended Charney, and therefore, when Plaintiffs knew that the 2014 proxy statement allegedly did not disclose the board's so-called "true intentions"

---

[1] ***Charney was terminated for cause*** after an independent committee advised by legal counsel conducted an extensive investigation into, among other things, Charney's (1) awarding improper severance packages and bonuses to employees; (2) potential failure to supervise and prevent his subordinates from posting false, defamatory and impersonating material on the internet targeting women who had accused Mr. Charney of sexual harassment; (3) violations of American Apparel's sexual harassment and anti-discrimination policies; (4) misuse of corporate assets; and (5) allegations of harassment, some of which gave rise to lawsuits and arbitrations.  (See Declaration of Douglas A. Smith ("Smith Decl.") Ex. 1; see also Charney Decl. ¶ 5 [ECF No. 14-4].)  The SEC has also issued a formal order of investigation with respect to whether there were violations of securities laws during Charney's tenure as CEO.  (See Smith Decl. Ex. 3.)

about Charney.  Putting aside that the claims are meritless, Plaintiffs waited *10 months* from June 18, 2014, to file their complaint and then about *11 months* to file this motion.  Consequently, Plaintiffs' motion suffers from fatal flaws.  To wit, Plaintiffs seek to:

•       invalidate the 2014 board elections *without* addressing the effect that could have on the myriad corporate actions the board has taken during the past year, including any effect on third-party agreements;

•       require a 2014 revote *without* explaining how the company can ensure it identifies all past shareholders, much less explain why the Court should allow *former* shareholders – who no longer have a *current* economic interest in the company – to control its future direction through the election of directors;

•       require corrective disclosures to shareholders for the 2014 annual meeting, again, without offering any evidence as to how to find those shareholders, and ignoring that the corrective disclosures they seek – namely the purported "facts" about the board's supposed "true intentions" for Charney – are already publicly known because of the disclosures surrounding Charney's suspension and termination in 2014; and

•       halt the *unrelated* election of this year's *2015* director class even though *none* of the three board seats at issue in the *2014* election are even at issue in the *2015* election.

The law does not entitle Plaintiffs to scour the 2014 proxy statement long after the proverbial corporate "eggs" have been "scrambled" to strain to conjure a hook to open the courthouse doors.  For almost a year, American Apparel has been operating and taking action in reliance on the validity of the 2014 elections.  The law certainly does not permit Plaintiffs to use this Court to upend the entire corporate operation, board, and shareholder franchise merely because Charney's initial plans to retake control of the company have failed, much less based on meritless claims.  Because "equity aids the vigilant, not those who slumber on their rights," and "finality and predictability with respect to a corporation's governing structure"[2] are critical to any corporate enterprise, Plaintiffs

_____

[2] In re Gen. Motors (Hughes) S'holders Litig., No. 20269-NC, 2003 WL 26474920, at *2 (Del. Ch. Oct. 2, 2003); Khanna v. McMinn, No. Civ. A. 20545-NC, 2006 WL 1388744, at

*(cont'd)*

1   cannot satisfy their heavy burden for an injunction.

2   **II.    FACTUAL BACKGROUND**

3          Plaintiffs are two Charney cronies: Plaintiff Ribner was Charney's college

4   roommate who helped Charney get his start in the apparel business, and Plaintiff Hubner is

5   a former American Apparel employee and known Charney supporter.  (See Smith Decl.

6   Exs. 9-10.)  Both declare that they held American Apparel stock more than a year ago, as

7   of April 21, 2014, but do **not** declare that they are **current** shareholders who have held

8   their shares continuously since then.  (See Pls.' Decls. ¶¶ 1-2 [ECF Nos. 14-2, 14-3].)

9          **A.    The Audit Committee Investigation & 2014 Proxy Statement**

10         In Spring 2014, when Charney was American Apparel's CEO and Chairman of the

11  Board, the company began investigating Charney for alleged misconduct.  (See Mayer

12  Decl. ¶ 4)  On April 28, 2014, American Apparel filed with the SEC the proxy statement

13  for the 2014 annual meeting scheduled for June 18, 2014.  (Mayer Decl. ¶ 5; Bishop Decl.

14  Ex. 1 at 6 [ECF No. 16].)  As explained in the statement, only three of the company's

15  seven directors were up for re-election at the meeting, namely David Danziger, Robert

16  Greene, and Allan Mayer.  (Mayer Decl. ¶ 5.)  Although the Audit Committee met

17  periodically to discuss the ongoing investigation into Charney's behavior, the board had

18  not reached a final determination as to whether to suspend or terminate Charney's

19  employment before the June 18, 2014, annual meeting.  (Mayer Decl. ¶¶ 6, 9.)

20         **B.    Charney's Suspension and Termination**

21         At the June 18, 2014, annual meeting, Danziger, Greene, and Mayer won re-election

22  to the board.  (See Mayer Decl. ¶ 8; Bishop Decl. Ex. 2, at 63.)  Later that day, the board

23  met, and based on the company's ongoing investigation, the independent board members

24  presented Charney with two options regarding his employment.  (See Mayer Decl. ¶ 9;

25  Bishop Decl. Ex. 2, at 63.).  One option would have allowed Charney to continue to work

26  as a paid consultant for the company.  (Mayer Decl. ¶ 9; Charney Decl. ¶ 2; Compl. ¶ 38.)

27  _____

28  (cont'd from previous page)
    *31 (Del. Ch. May 9, 2006).

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  The other option would have suspended Charney pending completion of a formal

2  investigation.  (Mayer Decl. ¶ 9; Charney Decl. ¶¶ 2-3; Smith Decl. Ex. 1.)  When

3  negotiations failed after several hours, the board voted to suspend Charney pending an

4  investigation into whether he should ultimately be terminated for cause.  (See Mayer Decl.

5  ¶ 9; Bishop Decl. Exs. 4-6.)

6      In response to his suspension, Charney sought to increase his American Apparel

7  stock holdings to gain control of the company or act in concert with other shareholders to

8  do so.  (See Mayer Decl. ¶ 11; Smith Decl. Ex. 12.)  Under a contract with hedge fund

9  Standard General, Charney received funds to enable him to acquire additional American

10 Apparel shares and thereby increase his voting control of the company's outstanding

11 shares.  (Mayer Decl. ¶ 11; Smith Decl. Exs. 12-13.)

12     Thereafter and in response to an SEC filing showing that Charney increased his

13 stock ownership of the company to 43%, American Apparel adopted a shareholder rights

14 plan, or poison pill.  (Mayer Decl. ¶ 12; Smith Decl. Exs. 14-15.)  The poison pill

15 prevented Charney from acquiring additional shares that would have given him control

16 over the company and the ability to oust the board that voted to suspend him and thereby

17 thwart the board's exercise of its fiduciary duties.  (Mayer Decl. ¶ 13.)  This forced

18 Charney and Standard General to enter into the Standstill Agreement.  (See id. ¶ 15; Smith

19 Decl. Ex. 16.)  The Standstill Agreement provides that (1) Standard General and Charney

20 shall *not* acquire any more shares of American Apparel stock; (2) Charney and four other

21 directors would resign from the board and not serve again; (3) Standard General would

22 select three new directors; (4) Standard General and the company jointly would select two

23 new independent directors; and (5) the board would create a "Suitability Committee" to

24 oversee the ongoing investigation into Charney's conduct and to decide whether he would

25 be able to return as CEO or in any other capacity at the company.  (Id.)  Pursuant to the

26 agreement, Charney thereafter irrevocably resigned as a director, and the board appointed

27 four new directors. (Mayer Decl. ¶ 17; Smith Decl. Ex. 17.)

28     In December 2014, and based on the conclusion of an in-depth investigation and a

1   unanimous Suitability Committee vote, American Apparel announced that Charney would
2   not serve in any corporate capacity and was terminated for cause in accordance with his
3   employment agreement.  (Mayer Decl. ¶ 21; Smith Decl. Ex. 18.)  The above events have
4   been disclosed in the company's SEC filings and press releases and publicized in national
5   press.  (E.g., id. Exs. 2, 17, 19-20; Compl. ¶¶ 36, 37, 40, 42, 44-49, 70, 81, 83, 85-89.)

6   ## C.   Plaintiffs' 11-Month Delay in Seeking Injunctive Relief

7       After his termination, Charney realized that Standard General's board appointees
8   would appropriately discharge their fiduciary duties to the company, as opposed to acting
9   in Charney's personal interests.  Thus, unable to use the newly seated board to regain his
10  leadership of the company, Charney launched a desperate legal campaign, in which he or
11  his confidants ask various courts to do that which Charney himself may not do because of
12  the Standstill Agreement – wrest control of the company away from the board and
13  management and reinstate himself as CEO and a director.[3]  For this reason, Plaintiffs filed
14  this lawsuit by which they seek class-wide equitable relief (despite only asserting claims as
15  individuals) to invalidate the election of the 2014 annual meeting.  Plaintiffs waited nearly
16  a year after the 2014 annual meeting and five months after Charney's termination to file
17  their suit despite widespread publicity about Charney's suspension and termination since
18  the 2014 annual meeting.

19      In their preliminary injunction motion, Plaintiffs ask that the Court order a "do-
20  over" of the 2014 board member elections (presumably with shareholders who no longer
21  own stock) and postpone the 2015 annual meeting (even though plaintiffs do not claim any

---

23  [3] This lawsuit is part of Charney's apparent legal campaign to regain control of the
    company, and failing that, obtain its ruin.  (See Smith Decl. Ex. 4 (discussing arbitration
24  demand Charney submitted arising from his removal), Ex. 5 [Complaint, Rodriguez v.
    Mayer, No. 10944 (Del. Ch.) (lawsuit filed by Charney's friend against former and current
    American Apparel officers and directors alleging disclosure claims regarding American
25  Apparel's 2014 proxy statement similar to those alleged here)], Ex. 6 [Complaint, Charney
    v. Standard Gen., L.P., No. BC 581130 (Cal. Super. Ct.) (lawsuit filed by Charney alleging
26  that Standard General "manufactur[ed] various ex post facto excuses for the Board's
    termination of Charney")], Ex. 6 [Complaint, Nisenbaum v. Am. Apparel, Inc., No.
27  BC579342 (Cal. Super. Ct.) (lawsuit filed by Charney's lawyer, Keith Fink, on behalf of a
    former employee alleging discrimination and wrongful termination claims)], Ex. 7
28  [Complaint, Hirschberg v. Am. Apparel, Inc., No. 15-cv-02827-BRO-JPD (C.D. Cal.)
    (labor class action filed by Charney's lawyer, Keith Fink)].

1   impropriety with that forthcoming election and a proxy statement has not yet issued) so

2   that Charney may attempt to regain the control of the company that he agreed in the

3   Standstill Agreement to relinquish.

4   **III.   BASIC THRESHOLD ISSUES PREVENT THE COURT FROM GRANTING THE INJUNCTIVE RELIEF PLAINTIFFS REQUEST**

5
6       "A preliminary injunction is an extraordinary and drastic remedy."  <u>Munaf v. Geren</u>,

7   553 U.S. 674, 689 (2008) (quotation omitted).  Plaintiffs seek three "extraordinary and

8   drastic remedies" in an effort to attain their primary goal of a "do over" of the 2014 vote,

9   including: (1) requiring American Apparel to issue corrected proxy statements for its 2014

10  annual meeting; (2) voiding the 2014 director elections and a re-vote on those elections;

11  and (3) postponing American Apparel's 2015 annual meeting until a re-vote of the 2014

12  director elections occurs based on corrected proxy statements.  This Court may not grant

13  any of these so-called "preliminary injunctions."

14      **A.    Plaintiffs' Requested Injunctions Must Not Be Granted Because the "Eggs Are Irretrievably Scrambled" Due to Delay**

15      Despite knowing the purported basis for their claims in June 2014, Plaintiffs

16  inexplicably waited until ***almost a year after*** the ***2014*** annual meeting, and just before the

17  ***2015*** annual meeting, to seek a "do over" of the 2014 director elections.[4]  Consequently,

18  (i) Plaintiffs' inexcusable delay, (ii) the tens of millions of shares of company stock that

19  have traded hands during the past ten months, (iii) the inability to locate with certainty the

20  beneficial owners of company shares who voted in the 2014 election, (iv) the changed

21  composition of American Apparel's board, and (v) the myriad actions American Apparel

22  directors and managers have taken over the past year all prohibit the Court as a matter of

23  Ninth Circuit and Delaware law from granting Plaintiffs' requested relief.  Under such

24  circumstances, denying the requested relief will uphold the maxim that "equity aids the

25  vigilant, not those who slumber on their rights," <u>In re Gen. Motors (Hughes) S'holders</u>

26  <u>Litig.</u>, 2003 WL 26474920, at *2 n.5, and acknowledge that "finality and predictability

27  _____

28  [4] <u>Cf.</u> Compl. ¶¶ 48-51 (establishing that Plaintiffs knew of their claim on June 18, 2014), <u>with</u> Compl. (showing a filing date of April 21, 2015).

with respect to a corporation's governing structure" is critical to any corporate enterprise, Khanna, 2006 WL 1388744, at *31 (Del. Ch. May 9, 2006); Calamore v. Juniper Networks Inc., 364 F. App'x 370, 371-72 (9th Cir. 2010).

According to the Ninth Circuit, a plaintiff may only obtain equitable relief for proxy disclosure claims "*if made promptly*." This is because crafting effective equitable relief becomes *impossible* once the company has taken the action authorized by the shareholder vote for which the proxy statement was issued.

> Direct proxy disclosure claims, *if made promptly*, may support equitable relief such as an order to amend a proxy solicitation and require a re-vote. However, when "the 'eggs' have been irretrievably 'scrambled[,]' . . . there is no possibility of effective equitable relief."

Calamore, 364 F. App'x at 372 (citing and quoting In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 808, 825 (Del.Ch. 2005)); see also Copeland v. Lane, No. 5:11-cv-0105, 2012 WL 4845636, at *11 (N.D. Cal. Oct. 10, 2012) (same); Copeland v. Lane, No. 5:11-CV-01058, 2013 WL 1899741, at *11 (N.D. Cal. May 6, 2013) (same); Apache Survival Coal. v. United States, 118 F.3d 663, 665 (9th Cir. 1997) (affirming denial of a preliminary injunction on laches grounds); accord Khanna, 2006 WL 1388744, at *31 ("[A] plaintiff seeking [to overturn a board election] must present her claims with reasonable alacrity if useful equitable relief is to be granted.").

Based on this legal principal, the Ninth Circuit in Calamore held that a plaintiff could not obtain equitable relief in the form of voiding a shareholder vote when plaintiff's delay of "nearly a year after the complained-of vote" allowed the eggs to be irretrievably scrambled. 364 F. App'x at 371-72. In Calamore, like here, the plaintiff alleged that a "false and misleading" proxy solicitation "frustrated the free exercise of [the company's] shareholders' voting rights" and sought to void the vote on the company's stock option plan. Id. at 371. The Ninth Circuit held that voiding the vote was not equitable relief a court could grant:

> [Plaintiff shareholder] failed to request a type of relief that can be granted. The only requested relief that logically and directly addresses her alleged harm is voiding the vote. [Plaintiff shareholder], however, did not file this action until nearly a year after the complained-of vote, even though, just four days after the vote, [the company] announced that its stock practices were under investigation. [Plaintiff shareholder's] delay allowed the "eggs" to be "irretrievably scrambled,"

especially considering that, by the time of filing, [the company] had issued millions of options to thousands of employees under the Plan.

Id. at 372 (footnote omitted).  The Ninth Circuit also held that even if the plaintiff amended her complaint to allege equitable relief in the form of a "new vote with a corrected proxy statement" that too would be futile because it is "unlikely to have any effect."  Id. at 372-3.  In so concluding, the Ninth Circuit relied in part on the fact that the alleged fraud is "already public knowledge."  Id.  Accordingly, the Ninth Circuit affirmed the dismissal of the plaintiff's claim *without* leave to amend, because the equitable relief plaintiff sought should not and could not be granted.  Id.

Importantly, Plaintiffs agree that Calamore and the fundamental legal principal it articulates governs their request for preliminary injunctive relief.  (See Mot. at 20 ("However, when 'the 'eggs' have been irretrievably 'scrambled[,]' . . . there is no possibility of effective equitable relief.'" (quoting Calamore, 364 F. App'x at 372)).)  Similar to the equitable relief requested in Calamore, Plaintiffs' requested relief comes *after* the eggs have already been irretrievably scrambled.

First, the eggs are scrambled because, with the passage of so much time, (i) American Apparel will not be able to locate all beneficial shareholders who could vote at the 2014 annual meeting,[5] and (ii) millions of the company's shares have been exchanged during Plaintiffs' ten-month delay in seeking relief.  These facts make a re-vote impossible.  As Plaintiffs themselves admit, "the [company's] shareholders now are a largely different body" from those entitled to vote at the 2014 annual meeting.  (Mot. at 22.)  Thus, it would be nearly impossible to identify and locate the company's former beneficial shareholders to hold the requested re-vote.  (See Declaration of Arthur B. Crozier ¶ 8.)  Indeed, many shareholders who owned stock as of the 2014 annual meeting likely no longer own stock now (see Crozier Decl. ¶¶ 6-7), including possibly Plaintiffs

---

[5] Under Delaware law, the shareholders who are entitled to vote on the 2014 director elections are fixed as the "holders of record" of American Apparel's common stock as of "the close of business on April 21, 2014."  (See Bishop Decl. Ex. 1, at 11 [ECF No. 16-1].)  See generally Del. Code Ann. tit. 8, § 213 (2014) (stating that a company may fix the date for determining the shareholders who may vote at a shareholder meeting).

1   Ribner and Hubner who have not alleged or declared that they are current American

2   Apparel shareholders (see Pls.' Decls. ¶¶ 1-2).  Thus, Plaintiffs ask this Court to grant

3   relief that would have **former** shareholders voting for three directors – charged with

4   managing the company's business affairs – even though those former shareholders do **not**

5   have any **current** economic interest in the company.  This would result in an empty vote

6   for 2014 not permitted under the law.

7        Second, while Plaintiffs seek to void the 2014 director elections that resulted in the

8   re-election of Greene, Mayer, and Danziger to allow for a revote, Plaintiffs ignore that

9   Danziger and Mayer have already served one-third of their terms (see Bishop Ex. 2), and

10  therefore, along with American Apparel's other board members, voted on numerous

11  corporate decisions during the past year.  Since the 2014 elections, American Apparel's

12  board, for example, has voted to (1) enter into the Standstill Agreement (Smith Decl. Ex.

13  16), (2) terminate Charney (id. Ex. 18); (3) appoint eight new board members (id. Ex. 17,

14  19, 21, 22, 26, 32); (4) approve measures facilitating the sale to Standard General of Lion

15  Capital's loan to the company (see id. Ex. 28); (5) obtain a loan from Standard General (id.

16  Ex. 16); (6) adopt shareholder rights plans (i.e., poison pills) (id. Exs. 15, 27); (7) amend

17  American Apparel's bylaws in various ways (e.g., id.); and (8) appoint a new management

18  team, including a new CEO, CFO, and General Counsel who have served for months now

19  and undertaken various operational changes to facilitate the turnaround needed after

20  Charney's mismanagement caused nearly $340 million in losses in five years (see id. Exs.

21  23-25 (officer appointments), 29-30 (showing loss)).  (Mayer Decl. ¶¶ 15, 19, 20-25.)

22  Importantly, many of these corporate decisions affect third-parties, such as Standard

23  General and Lion Capital, who necessarily have relied on the validity of those corporate

24  decisions.  Given these events, among others, the proverbial "eggs" have become

25  irretrievably "scrambled."

26        This Court should therefore follow the reasoning in Copeland, in which the court

27  denied a re-vote because plaintiffs waited nearly a year to challenge disputed director

28  elections based on an allegedly fraudulent proxy statement.

Plaintiff contends that . . . at time of the filing of the [complaint], the term of the directors elected in 2012 had not yet expired.  While this may be true, Plaintiff's request that the Court order a new annual meeting and vote for the 2012 Board is simply brought too late as, at the time of the filing of the [complaint], the directors elected in 2012 had already substantially served their one-year terms [in the approximately seven months that plaintiffs delayed in filing their complaint after the election].  As such, it is not feasible that the relief sought would benefit Plaintiff as an individual shareholder, for the "eggs have already been irretrievably scrambled."  This is similar to the outcome in Calamore where the plaintiff filed suit ten months after the vote was solicited by the challenged proxy statement.

2013 WL 1899741, at *11 & n.7 (citations omitted).  In comparison to the Copeland

plaintiffs' 7-month delay and the Calamore plaintiffs' 10-month delay, Plaintiffs here

delayed 11 months before seeking injunctive relief.  Meanwhile, the board was voting on

numerous corporate decisions that now cannot be undone.

As for Greene, his term ended upon his resignation on August 2, 2014, and the

board appointed a new person (David Glazek) to serve the remainder of Greene's three-

year term, as part of the Standstill Agreement to which Charney is a party.  (See Smith

Decl. Ex. 31; Mayer Decl. ¶ 17.)  Thus, Greene's re-election is effectively already voided,

as he resigned shortly after the 2014 annual meeting, and the director who has taken

Greene's place *has already served for three quarters of a year*.  Thus, even if Plaintiffs

received a revote on Greene, it could not affect the seating of the director who already took

Greene's place as part of the Standstill Agreement with Charney.  Any re-vote therefore

could pertain only to the portion of Greene's three-year term that he has already served

since Plaintiffs do not allege any impropriety with his successor's appointment.  See

Copeland, 2012 WL 4845636, at *11 (agreeing with defendants that "there can be no

revote because the directors elected [based on the allegedly misleading proxy statements]

have already served their terms").[6]  Accordingly, the Court should not grant Plaintiffs the

"extraordinary and drastic remedy" of a preliminary injunction, because the eggs have

---

[6] Califano v. Yamasaki, 442 U.S. 682, 703 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."); In re Tyson Foods, Inc. Consol. S'holder Litig., 919 A.2d 563, 602 n.113 (Del. Ch. 2007) ("[T]he board has survived two subsequent elections regarding which plaintiffs make no allegations of impropriety.  Overturning the result of the 2014 elections would thus have no real effect, as it is beyond this Court's power to insist that new directors travel backwards in time a number of years to take up their posts."); Calamore, 364 F. App'x at 372.

1    become irretrievably scrambled during their 11-month delay.

2    **B.**    **Plaintiffs Improperly Request A Mandatory, Final Injunction To Remedy Past Harm, Not A Preliminary Injunction To Maintain The Status Quo**

3

4    Plaintiffs seek mandatory injunctions requiring American Apparel to (1) issue

5 corrected 2014 proxy statements and (2) conduct a re-vote of the 2014 director elections.

6 See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH, 571 F.3d 873, 878-79 (9th Cir.

7 2009) ("A mandatory injunction orders a responsible party to take action." (quotation

8 omitted)).  A mandatory injunction, which is "particularly disfavored," Anderson v. United

9 States, 612 F.2d 1112, 1114 (9th Cir. 1980), may only issue, however, to prevent

10 irreparable harm and thereby maintain the status quo pending resolution of the case on the

11 merits.  LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th Cir.

12 2006) ("Mandatory relief is unnecessary in this case because it will not further the purpose

13 of a preliminary injunction, [which] is merely to preserve the relative positions of the

14 parties until a trial on the merits can be held." (quotation omitted)).

15    Plaintiffs do not need mandatory injunctions in the form of (1) a re-vote or (2)

16 corrective disclosures to maintain the status quo.  Indeed, because these injunctions seek to

17 remedy ***past*** harm from the allegedly misleading 2014 proxy statement, rather than

18 preventing ***future*** harm from occurring to Plaintiffs pending resolution of Plaintiffs'

19 claims on the merits, these injunctions do ***nothing*** to preserve the status quo.  The Court

20 therefore may not grant them.[7]  See Villegal v. Schulteis, No. 1:09-cv-00493, 2010 WL

21 3341888, at *3 (E.D. Cal. Aug. 25, 2010) (stating that "[t]he purpose of a preliminary

22

---

23 [7] The corrective disclosures Plaintiffs seek regarding the individual defendants "true intentions with respect to the continued employment of the Company's then Chairman and

24 Chief Executive Office Dov Charney" (Notice of Mot. at 1 [ECF No. 1].) are unnecessary, in any event.  As Plaintiffs' exhibits, news articles and other press reports, and American

25 Apparel's SEC filings make clear, even crediting Plaintiffs' allegations (and Defendants reject them), the defendant directors' purported "true intentions" about Charney are public

26 knowledge and have been widely publicized.  (See supra Part II.C.)  It is nonsensical for Plaintiffs to seek corrective disclosures to American Apparel's 2014 proxy statement when

27 the substance of the disclosures Plaintiffs seek ***already appear*** now in the company's SEC filings.  Because the corrective disclosures are "already public knowledge," equitable relief

28 in the form of a corrected proxy statement ***now*** will have ***no*** incremental effect on any shareholder re-vote of the 2014 director elections because everyone already knows what Plaintiffs' characterize as the directors' purported "true intentions."

1 injunction is to prevent future irreparable harm, not to remedy past harm" and

2 recommending the denial of a request for a preliminary injunction because "Plaintiff has

3 failed to identify any specific threat of future irreparable harm"), adopted by 2010 WL

4 4723058 (E.D. Cal.) Nov. 15, 2010); Calamore v. Juniper Networks Inc., No. 07-01772,

5 2007 WL 1100313, at *2 (N.D. Cal. Apr. 12, 2007) ("This Court sees far less rationale for

6 preliminary injunctive relief where the shareholder vote has already taken place, and

7 Plaintiff fails to show that the temporary relief she seeks would operate to prevent further

8 injury to her or other stockholders in the interim that is irreparable in nature.").[8]

9       Plaintiffs are also not entitled to corrective disclosures and a revote of the 2014

10 director elections because that relief is the *final* injunctive relief that Plaintiffs seek, which

11 may only be obtained after summary judgment or trial.[9]   See Kass v. Arden-Mayfair, Inc.,

12 431 F. Supp. 1037, 1041 (C.D. Cal. 1977) ("[W]here the granting of a preliminary

13 injunction would give to a plaintiff all the actual advantage which he could obtain as a

14 _____

15 [8] See also Conte v. Transglobal Assets, No. 2:12-CV-01005, 2012 WL 4092717, at *1-2
(D. Nev. Sept. 17, 2012) ("The purpose of a preliminary injunction is not to remedy past

16 harm but to protect plaintiffs from irreparable injury that will surely result without [its]
issuance." (citation omitted)); Delarosa v. Boiron, Inc., No. 10-1569-JST CWX, 2012 WL

17 8716658, at *4 (C.D. Cal. Dec. 28, 2012) ("Plaintiff cannot seek injunctive relief . . .
because any loss to her 'has already occurred'. . . ."); In re Digex Inc. S'holders Litig., 789

18 A.2d 1176, 1215 (Del. Ch. 2000) (stating that when "the wrongful act has already
occurred, no prospective injunctive order can possibly be an effective remedy" and then

19 denying a preliminary injunction where "plaintiffs have essentially asked the Court, via an
injunction, to invalidate" the results of an allegedly-improper vote taken in the past; noting

20 "the plaintiffs' request for a preliminary injunction against the [prior vote] is both
temporally impossible and jurisdictionally inappropriate").

21 [9] To the extent that Plaintiffs suggest that they need these mandatory injunctions before the
2015 annual meeting, that is nonsense.  See supra Part III.B.  Furthermore, the cases

22 Plaintiffs cite did *not* grant a request for preliminary injunctive relief *after* the alleged
harm had already occurred.  See MONY Grp., Inc. v. Highfields Capital Mgmt., L.P., 368

23 F.3d 138, 148 (2d Cir. 2004) (ordering *pre-vote* injunction); Allergan, Inc. v. Valeant
Pharm. Int'l, Inc., No. 14-1214, 2014 WL 5604539, at *16 (C.D. Cal. Nov. 4, 2014)

24 (same); St. Louis Police Ret. Sys. v. Severson, C.A. No. 12-CV-5086 YGR, 2012 WL
5270125, at *6 (N.D. Cal. Oct. 23, 2012) (same); In re J.P. Morgan Chase & Co. S'holder

25 Litig., 906 A.2d 808, 825 (Del. Ch. 2005) (dismissing disclosure claims; noting "the
plaintiffs did not seek an injunction to stop the merger *before* it closed"), aff'd, 906 A.2d

26 766 (Del. 2006); Calamore, 364 F. App'x at 372 (dismissing claims when plaintiff *waited
nearly a year* after a challenged vote in fee suit); Mills v. Elec. Auto-Lite Co., 396 U.S.

27 375, 386 (1970) (considering post-vote remedies that did not involve injunctive relief, and
noting "***nothing in the statutory policy 'requires the court to unscramble a corporate
transaction merely because a violation occurred'***"); Bender v. Jordan, 439 F. Supp. 2d

28 139, 177 (D.D.C. 2006) (granting preliminary injunction when "*impending* second
election" would "hopelessly jumble the Board's membership").

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

result of a final adjudication of the controversy in his favor, a motion for a preliminary injunction ordinarily should be denied.").  Plaintiffs may not receive *final* injunctive relief before Defendants have even responded to the belatedly filed complaint and where American Apparel contends that Plaintiffs' claims should be dismissed as a matter of law (and disputes their factual underpinnings), as explained below.  See LGS Architects, 434 F.3d at 1158 ("Mandatory relief is unnecessary in this case because it will not further the "purpose of a preliminary injunction, [which] is merely to preserve the relative positions of the parties until a trial on the merits can be held."  If [plaintiff] prevails on summary judgment or after a trial on the merits, the district court should then consider whether to award [plaintiff] a mandatory injunction . . . ." (alteration in original)); accord C & J Energy Servs., Inc. v. City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Trust, 107 A.3d 1049, 1053-54 (Del. 2014) ("Mandatory injunctions should only issue with the confidence of findings after a trial or on undisputed facts.").

## IV.  PLAINTIFFS DO NOT MEET THE STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

A plaintiff may obtain preliminary injunctive relief if he satisfies either the four-factor test or the "sliding scale" test.  See Masters v. Avanir Pharm., Inc., 996 F. Supp. 2d 872, 878-79 (C.D. Cal. 2014).  Under the four-factor test, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest.  Id.  Under the sliding scale test, a slightly weaker showing of success on the merits (serious questions going to the merits) can be outweighed by strong equitable considerations (a balance of hardships that tips sharply towards the plaintiff) so long as the plaintiff also shows that "there is a likelihood of irreparably injury and that the injunction is in the public interest."  Id.  No matter what test this Court employs, Plaintiffs do not meet it.

### A.  Plaintiffs Will Not Suffer Irreparable Harm

"[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction."  Winter v. Natural Res. Def. Council, Inc., 555 U.S.

1  7, 22 (2008); see also Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc., 736 F.3d

2  1239, 1251 (9th Cir. 2013) ("Those seeking injunctive relief must ***proffer evidence***

3  sufficient to establish a likelihood of irreparable harm." (emphasis added)).

4       Plaintiffs have not proffered any evidence of irreparable harm in the form of

5  declarations or otherwise.  Because their purported irreparable harm is therefore nothing

6  but speculation, that alone requires the denial of their motion.  See Caribbean Marine

7  Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not

8  constitute irreparable injury sufficient to warrant granting a preliminary injunction.").

9       In any event, Plaintiffs' theorized irreparable harm is nonsense.  Plaintiffs contend

10  that they will suffer irreparable harm unless the 2015 annual meeting is postponed pending

11  a re-vote of the 2014 director elections based on corrected proxy statements.  (See Mot.

12  18-21.)  They argue that "the eggs will be further scrambled by another vote on directors

13  while Record Holders [(i.e., Plaintiffs)] remain disenfranchised." (Mot. at 21.)  Not so.

14  Plaintiffs allege that the allegedly misleading proxy caused them to cast less than fully

15  informed votes on the elections of Danziger, Mayer, and Greene at the 2014 annual

16  meeting.  But ***none*** of the seats held by those directors are up for election at the 2015

17  annual meeting.  (See Smith Decl. Ex. 32.)  Thus, the status quo will be maintained

18  regardless of whether the 2015 annual meeting goes forward; indeed, Danziger and Mayer,

19  and Greene's successor will be on the Board *before* and *after* the 2015 annual meeting.

20  Furthermore, Plaintiffs do not allege or argue that the corrective disclosures they seek are

21  relevant to ensuring a fully informed shareholder vote on the three directors who are up for

22  re-election at the ***2015*** annual meeting.  Nor could Plaintiffs, because those directors were

23  appointed ***after*** the allegedly fraudulent 2014 proxy statement was issued.  (See id.)  Thus,

24  Plaintiffs will not suffer their ***theorized*** irreparable injury should the 2015 annual meeting

25  proceed as scheduled.[10]

26  _____

27  [10] To the extent that Plaintiffs attempt to claim future irreparable harm if the re-vote on 2014 director elections based on corrected proxy statements does not occur before final

28  resolution of this case, the Court should summarily reject any such claim.  Plaintiffs' 10-month delay in seeking that relief belies any claim of irreparable harm should those

*(cont'd)*

**B.   Plaintiffs Cannot Show a Likelihood of Success on the Merits**

Plaintiffs have alleged four claims:  (1) a violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder; (2) control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), predicated solely on the Section 14(a) violation; (3) Delaware-law based claims for breaches of the "duty of disclosure/candor"; and (4) aiding and abetting those breaches.  However, none of Plaintiffs' claims can support injunctive relief.[11]

**1.   Plaintiffs' Section 14(a) and 20(a) Claims Must Be Dismissed Because They Do Not Allege Any Economic Loss**

Plaintiffs' Section 14(a) and 20(a) claims are subject to the Private Securities Litigation Reform Act ("PSLRA"), which requires plaintiffs to allege loss causation by connecting "proxy misstatements with an actual economic [loss]."  See N.Y.City Emps.' Ret. Sys. v. Jobs, 593 F.3d 1018, 1023 (9th Cir. 2010).  The Ninth Circuit has held that a plaintiff is only entitled to equitable relief for a Section 14(a) violation if he or she has suffered an economic loss.

> The PSLRA does not differentiate between plaintiffs seeking legal and equitable remedies, and thus, without an allegation of economic loss, no remedy, equitable or otherwise, is available.

Id. at 1024.  For that reason, when, as here, plaintiffs only allege a deprivation of their

_____
(cont'd from previous page)
injunctions not issue before resolution of this case.  See Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiffs long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm," which is necessary to obtain a preliminary injunction); Boldface Licensing & Branding v. By Lee Tillett, Inc., 940 F. Supp. 2d 1178, 1197 (C.D. Cal. 2013) ("It has often been held that unreasonable delay in filing suit and/or moving for a preliminary injunction can contribute to a defeat of a motion for preliminary injunction . . . for the reason that delay negates the moving party's ability to show the kind of 'irreparable injury' needed for preliminary relief.") (quotation marks omitted).

[11] Because Plaintiffs' claims must be dismissed, Plaintiffs necessarily fail to establish the irreparable harm necessary for a preliminary injunction.  See, e.g., Dixon v. Cost Plus, No. 12-CV-02721-LHK, 2012 WL 2499931, at *12 (N.D. Cal. June 27, 2012) (finding no irreparable harm because where plaintiffs "have failed to establish a likelihood of success on the merits of the disclosure claims, there is no similar threat that the shareholders will not be able to make an informed decision on an important voting decision"); In re Answers Corp. S'holders Litig., C.A. No. 6170-VCN, 2011 WL 1366780, at *9 (Del. Ch. Apr. 11, 2011) ("Because the Plaintiffs have not demonstrated a likelihood of success with regard to either their price and process claims or their disclosure claims, they have also not demonstrated a likelihood that Answers' shareholders will suffer irreparable harm if the Plaintiffs' motion for a preliminary injunction is denied.").

15

right to a fully informed vote without any allegation of economic loss, courts conclude that plaintiffs have failed to state a Section 14(a) claim.

> The court concludes that [plaintiff's] direct claim under § 14(a) fails to meet the heightened pleading standards of the PSLRA because it does not allege an economic injury and, as a result, fails to satisfy the loss causation requirement. . . . ***[Plaintiff's] direct claim, which alleges a deprivation of his right to a fully informed stockholder vote caused by the misrepresentations in the Proxy Statement, seeks only injunctive relief in the form of corrective disclosures and another vote on the 2009 Plan. This injury is insufficient to meet the loss causation requirement***, and as a result, [plaintiff's] direct claim for relief under § 14(a) fails to state a claim upon which relief can be granted.

Resnik v. Woertz, 774 F. Supp. 2d 614, 632 (D. Del. 2011) (emphasis added) (citing Jobs, 593 F.3d at 1023); see also Hoch v. Alexander, No. 11-217, 2011 WL 2633722, at *5 (D. Del. July 1, 2011) (dismissing a direct Section 14(a) because a "claim alleging a deprivation of the right to a fully informed vote and seeking only corrective disclosures and a new vote fails to meet the loss causation requirement," which requires a "link between the alleged misstatements in the proxy statement and actual economic harm"). Because Plaintiffs here do not allege any economic loss in their complaint, their Sections 14(a) and 20(a) claims must be dismissed.  See Resnik, 774 F. Supp. 2d at 632; Hoch, 2011 WL 2633722, at *5; see also Krieger v. Atheros Commc's, Inc., Inc., No. 11-CV-00640, 2012 WL 1933559, at *8 (May 29, 2012).

### 2. The Proxy Statement Did Not Contain Any Misrepresentations or Omissions

To prevail, plaintiffs must establish that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction."  Jobs, 593 F.3d at 1022. Importantly, "Section 14(a) and Rule 14a-9 do not obligate corporate officials to present, no matter how unlikely, every conceivable argument against their own recommendations." Desaigoudar v. Meyercord, 223 F.3d 1020, 1024 (9th Cir. 2000).

The duty of disclosure (or duty of candor) represents nothing more than the well-recognized proposition that "directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks

1  shareholder action." <u>Masters</u>, 996 F. Supp. 2d at 879 (quoting <u>Stroud v. Grace</u>, 606 A.2d

2  75, 84 (Del. 1992)).  Materiality is measured objectively:  "An omitted fact is material if

3  there is a substantial likelihood that a reasonable shareholder would consider it important

4  in deciding how to vote."  <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976).

5  This standard applies to Rule 14a-9 claims (<u>see id.</u>), and those involving the duty of

6  disclosure under state law.  <u>See</u> <u>Pfeffer v. Redstone</u>, 965 A.2d 676, 686 (Del. 2009).

7          Here, Plaintiffs have not identified a material misrepresentation or omission in the

8  proxy.  Plaintiffs' proxy misrepresentation claims are based almost entirely on the

9  following paragraph:

> Dov Charney, who serves as both our Chief Executive Officer and Chairman of the Board, leads and provides strategic guidance to the Company's management team, each of whom has experience in the apparel industry.  American Apparel's senior officers closely supervise all aspects of the Company's business, in particular the design and production of merchandise, the operation of our stores and our financial reporting function.  The Board of Directors has determined that the combination of these roles held singularly by Mr. Charney is in the best interests of all stockholders given that Mr. Charney founded the Company, is considered intimately connected to American Apparel's brand identity and is the principal driving force behind American Apparel's core concepts and designs.  The Board believes that it is in the best interests of the Company for the Board to make a determination whether to combine or separate the roles based upon the circumstances.  The Board has given careful consideration to separating the roles of Chairman of the Board and Chief Executive Officer and has determined that the Company and its stockholders are best served by the current structure. Mr. Charney's combined role promotes unified leadership and direction for the Board and executive management and allows for a single, clear focus for the Company's operational and strategic efforts.

19  (Compl. ¶ 26.)  These "facts" cannot form the basis of any federal or state law disclosure

20  claim because they were truthful concerning the board's view about "whether to combine

21  or separate the roles" of chairman and CEO.  Furthermore, Item 407(h) of SEC Regulation

22  S-K requires this paragraph.[12]

23          Plaintiffs nonetheless contend that these truthful facts required by law were

24  _____

25  [12] Item 407(h) provides in relevant part:  "Briefly describe the leadership structure of the registrant's board, such as whether the same person serves as both principal executive

26  officer and chairman of the board, or whether two individuals serve in those positions[.]  If one person serves as both principal executive officer and chairman of the board … disclose

27  whether the registrant has a lead independent director and what specific role the lead independent director plays in the leadership of the board.  This disclosure should indicate

28  why the registrant has determined that its leadership structure is appropriate given the specific characteristics or circumstances of the registrant."  17 C.F.R. § 229.407(h).

1   inconsistent with the board's alleged plan to *terminate* Charney at the June 18 Board

2   meeting.  Not so.  <u>First</u>, the Board did not *terminate* Charney at the June 2014 board

3   meeting; rather, it *suspended* him pending a formal investigation into his conduct.  (<u>See</u>

4   Bishop Decl. Ex. 4.)  <u>Second</u>, the reasons the board elected to "combine" the roles of the

5   chairman and CEO are accurate; the proxy statement nowhere states that Charney's role in

6   the company was sacrosanct.  Indeed, the proxy statement repeatedly says that Charney

7   could be terminated "without 'cause'" or "for 'good reason.'" (Bishop Ex. 1, at 47.)  <u>Third</u>,

8   the fact of Charney's suspension could not be disclosed in the proxy because it happened

9   *after* the shareholder vote at the annual meeting.  (<u>See</u> <u>supra</u> Part I.B.)

10      In <u>Bolger v. First State Financial Services.</u>, 759 F. Supp. 182, 194 (D.N.J. 1991), the

11   court *denied* injunctive relief based on a similar disclosure claim.  Plaintiff alleged that the

12   defendant company violated Section 14(a) because it did not disclose in its proxy

13   statement that in light of an investigation the "board of directors [was] actively considering

14   whether to take action against its officers and directors for breach of their corporate and

15   fiduciary duties" and for other things.  <u>Id.</u> at 188.  As here, plaintiffs sought to enjoin

16   defendant company's annual meeting until the company issued corrected proxy statements.

17   <u>Id.</u> at 184.  In concluding that plaintiffs failed to establish a disclosure violation, the court

18   reasoned that "[a] company has no duty to disclose to shareholders unsubstantiated

19   allegations" under the securities laws and that the board was therefore not "obligated to

20   disclose whatever preliminary steps it took in response to those allegations," including

21   forming a special committee to investigate the wrongdoing.  <u>Id.</u> at 194.

22      Plaintiffs' claims thus boil down to nothing more than that the board should have

23   disclosed *speculation* about whether Charney would be suspended based on the

24   preliminary investigation.  But such disclosure is not required.  <u>See, e.g.</u>, <u>Basic Inc. v.</u>

25   <u>Levinson</u>, 485 U.S. 224, 232 (1988) (where "event is contingent or speculative in nature, it

26   is difficult to ascertain whether the 'reasonable investor' would have considered the

27   omitted information significant at the time"); <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497,

28   504 (9th Cir. 1992) (no disclosure required when event is contingent or speculative in

1  nature); <u>Masters</u>, 996 F. Supp. 2d at 883 ("Defendants are not required to disclose

2  speculative projections; to do so risks affirmatively misleading investors.").

3      Plaintiffs also take issue with the proxy statement's biographical description of

4  Charney, claiming that the description that Charney "provides our Board with an informed

5  perspective on the Company and the apparel industry and the perspectives and judgment

6  necessary to guide the Company's strategy and monitor its execution," was materially

7  misleading for the same reason—the allegedly undisclosed plan of certain other members

8  of the Board to terminate Mr. Charney's employment.  (Compl. ¶ 25.)  Here again, this

9  disclosure is required by law, Item 401 of SEC Regulation S-K.  The description is also

10  accurate; the company suspended Charney not because he could not offer "perspective on

11  the Company and the apparel industry," but because of his improper and injurious conduct.

12      Plaintiffs also argue that the statement in the proxy describing Mr. Charney's

13  employment agreement—"Charney will serve as the Company's Chief Executive Officer

14  for a term ending on March 31, 2015"—was materially misleading since his employment

15  ended before then.  (Compl. ¶ 27.)  This statement, too, was truthful, as it accurately

16  described the material provisions of Charney's employment agreement, including the

17  precise termination date of his employment contract.  (<u>See</u> Smith Decl. Ex. 33, at 2.)   The

18  proxy also described the termination provisions in Charney's employment agreement

19  (which is publicly available in SEC filings), including the "for cause" termination

20  provision.  (<u>Id.</u> at 4-8)  No reasonable shareholder would be misled by these disclosures

21  that Charney's employment was ***guaranteed*** or that Charney could not be terminated,

22  whether ***for cause*** or otherwise.

23      **3.      <u>The Proxy Solicitation Was Not an "Essential Link" in the Board's</u>**
24  **<u>Decision To Suspend Charney</u>**

25      Plaintiffs claim the proxy solicitation was an "essential link" in the board's decision

26  to oust Charney, based on a misinterpretation of the individual defendants' briefing in the

26  related derivative litigation, which this Court dismissed.  In that case, defendants were

27  faulted by two shareholders for waiting too long to terminate Charney, and defendants

28  responded that the timing of any action against Charney was important, given that he held

1  a significant portion of stock and would likely seek to regain control of the company,

2  which, defendants pointed out, "is exactly what happened, as Charney partnered with

3  Standard General to increase his holdings" after he was suspended.  (Bishop Decl. Ex. 8 at

4  125.)  It does not follow that the proxy solicitation was an "essential link" in the Board's

5  decision to suspend Charney, and defendants did not suggest otherwise in their briefing.

6  In reality, the Board did not need the proxy solicitation to take action against Charney.  A

7  majority of the directors could have called a special meeting and suspended Charney at

8  any time, before or after the annual meeting.  (See Bishop Ex. 3 at 68.)

9        Plaintiffs' allegation in the complaint that a quorum would not have been present at

10  the 2014 annual meeting, had American Apparel made the requested disclosures, is

11  baseless speculation.  (Compl. ¶ 80.)  In essence, plaintiffs wanted Charney to be tipped

12  off to his possible suspension to permit him to take hostile actions against the company,

13  including seeking to put in place different directors who would have acted in Charney's

14  interest (by, for example, prejudging or rigging the investigation or shutting it down

15  altogether) rather than in the company's best interest as required by their fiduciary duties.

16  However, plaintiffs cannot profess to know what would have happened if Charney had

17  known before the annual meeting that he might have been suspended.  Even if Charney

18  decided not to attend the meeting, other shareholders may have decided to attend to

19  establish a quorum.  Moreover, all of the directors up for election already were on the

20  board, so if no quorum was established, the incumbent directors would have remained on

21  the Board (Smith Decl. Ex. 11 art. VI), and still could have voted to suspend Charney.

22        **4.    Plaintiffs' Claims for Fiduciary Duty Breaches Fail**

23        Plaintiffs have likewise not demonstrated they are likely to succeed on the merits of

24  their state law disclosure claims.  Under Delaware law, the duty of candor is not an

25  independent fiduciary duty, but derives from the fiduciary duties of loyalty and care.  See

26  In re BioClinica, Inc. S'holder Litig., No. 8272-VCG, 2013 WL 5631233, at *8 n.75 (Del.

27  Ch. Oct. 16, 2013).  Here, Plaintiffs have not even attempted to demonstrate that

28  Defendants breached their fiduciary duty of care by acting with gross negligence, or

1  breached their fiduciary duty of loyalty by acting in a self-interested manner or in bad

2  faith.  Rote speculation concerning purported "entrenchment" motive does not suffice.

3  See, e.g., Greenwald v. Batterson, No. 16475, 1999 WL 596276, at *5 (Del. Ch. July 26,

4  1999) (dismissing claims based on "paper-thin allegations of entrenchment").

5       Moreover, Delaware has adopted the federal standard for determining disclosure

6  violations.  Bioclinica, 2013 WL 5631233 at *8 n.73.  Because, for the reasons above,

7  Plaintiffs have failed to demonstrate a material misstatement upon which to predicate any

8  disclosure claim, Plaintiffs have not demonstrated they are likely to succeed on the merits

9  of their state law disclosure claims either.  Red Oak Fund, L.P. v. Digirad Corp., C.A. No.

10  8559-VCN, 2013 WL 5740103, at *10, 16 (Del. Ch. Oct. 23, 2013) (citing Stroud, 606

11  A.2d at 87) (concluding directors did not breach fiduciary duties where no disclosure

12  violation occurred under the federal securities laws).

13       Lastly, to the extent that Plaintiffs claim that American Apparel aided and abetted

14  the independent director defendants' alleged breaches of fiduciary duties, that is

15  impossible and that claim against the company must be summarily dismissed.  Compare

16  Compl. ¶¶ 105-08 (charging "all defendants" with aiding and abetting), with In re Orchard

17  Enters., Inc., 88 A.3d 1, 54 (Del. Ch. 2014) ("A corporation cannot aid and abet violations

18  by the fiduciaries who serve it.").

19                    **5.**   **Plaintiffs Lack Standing**

20       Under Ninth Circuit authority, Plaintiffs' claims may not be brought directly, but

21  rather may only be brought derivatively in a shareholder derivative lawsuit on behalf of

22  American Apparel.  Indeed, when, as here, a stockholder seeking to invalidate the results

23  of an annual meeting unreasonably delays in asserting claims until after the "eggs" have

24  been irrevocably "scrambled," the only relief to which he could be entitled is owed to the

25  corporation, and the claim is derivative.  See Calamore, 364 F. App'x at 371-72

26  (explaining that where plaintiff delays in challenging annual meeting results and the only

27  type of relief that can be granted is relief that would benefit the corporation, a claim is

28  derivative and not direct); see also Copeland, 2012 WL 4845636, at *11-12 (concluding

1     that because plaintiffs were not entitled to the equitable relief of a re-vote, their Section

2     14(a) claim may only be brought derivatively on behalf of the company).

3         To bring a shareholder derivative claim, Plaintiffs must comply with the

4     requirements under Federal Rule of Civil Procedure 23.1.  Among other things, Rule 23.1

5     requires Plaintiffs to allege demand futility, or the company's wrongful denial of a

6     demand, and that they are American Apparel shareholders who have continuously held the

7     company's stock since the allegedly misleading proxy statement.  See Fed. R. Civ. P. 23.1.

8     Because Plaintiffs' complaint contains none of these required allegations for asserting

9     derivative claims (see Compl. passim), their claims must be dismissed.  See, e.g., Mieuli v.

10    Debartolo, No. C-00-3225, 2001 WL 777447, at *12-13 (N.D. Cal. Jan. 16, 2001)

11    (dismissing derivative claims for failing to allege demand futility or that demand was

12    made on the board and wrongfully rejected); Quinn v. Anvil Corp., 620 F.3d 1005, 1015

13    (9th Cir. 2010) (affirming district court's dismissal of derivative claims when the plaintiff

14    did not "show that he met the continuous ownership requirement of Rule 23.1"); Feldman

15    v. Cutaia, 956 A.2d 644, 660 (Del. Ch. 2007) (continuous ownership requirement ensures

16    a "derivative plaintiff truly represents the corporation's interests in bringing a lawsuit").

17         Furthermore, because Plaintiffs do not allege or declare that they are current

18    American Apparel shareholders, they have not demonstrated that they may ask for any

19    relief in connection with the upcoming 2015 meeting, as the conduct of the current board

20    is not at issue.  See Emerson Radio Corp. v. Int'l Jensen Inc., Nos. 15130, 14992, 1996

21    WL 483086, at *13 (Del. Ch. Aug. 20, 1996) (finding that potential acquirer that did not

22    own shares in target company "has no standing to raise the fiduciary duty claims upon

23    which its injunction motion is predicated").  Absent a declaration of current stock

24    ownership, Plaintiffs have no interest in the company's future direction, and therefore,

25    cannot seek such prospective injunctive relief.  See generally Richards v. Ernst & Young,

26    LLP, No. 11-17530, slip op. at 4 (9th Cir. Dec. 9, 2013) (per curium) (affirming that the

27    district court's reasoning that a plaintiff seeking an injunction lacks standing if plaintiff

28    "could not benefit from prospective relief").

### C.   The Balance of the Equities Weighs Against an Injunction and an Injunction Would Not Be in the Public Interest

As shown above, Plaintiffs will not suffer any harm, let alone irreparable harm, should the Court not grant the requested relief.  In stark contrast, American Apparel and its shareholders would suffer significant harm.

First, American Apparel would incur substantial expense (see Natha Decl. ¶¶ 5, 7) , which would be troubling given the company's liquidity position.  Conducting a re-vote of the 2014 director elections and the issuance of corrective disclosures will be costly because of the difficulties of locating beneficial owners for a re-vote.  (See Crozier ¶ 8.) Furthermore, it will be impossible to locate all beneficial owners if they have moved, and it would be impossible to know whether they continue to own stock since millions of company shares traded in the market while Plaintiffs delayed.  (Crozier ¶¶ 6-8.)  Also, it would create a massive distraction to conduct a revote while American Apparel is preparing for the 2015 annual meeting.  (See Natha Decl. ¶ 7.)

Second, a re-vote of the 2014 director elections and a delay of the 2015 annual meeting will disenfranchise American Apparel's *current* shareholders.  Given the turnover in American Apparel's shareholders, a re-vote of the 2014 director elections could permit a large group of people to elect directors for a company for which *they are no longer shareholders*.  That turns the notion of corporate governance on its head and undermines the fundamental right of the *current* shareholders to elect the directors of their choice to direct the affairs of the company.  See Strougo v. Hollander, 111 A.3d 590, 595 n.21 (Del. Ch. 2015) ("Modern corporate law recognizes that stockholders have three fundamental, substantive rights: *to vote*, to sell, and to sue." (emphasis added)); Leo E. Strine, Jr., Can We Do Better by Ordinary Investors? A Pragmatic Reaction to the Dueling Ideological Mythologists of Corporate Law, 114 Colum. L. Rev. 449, 453-54 (2014) ("In American corporate law, *only stockholders get to elect directors*, vote on corporate transactions and charter amendments, and sue to enforce the corporation's compliance with the corporate law and the directors' compliance with their fiduciary duties." (emphasis added)); De Maison v. ClairNet, Ltd., No. 13-00481-VAP, 2013 WL 1855799, at *2 (C.D. Cal. Apr.

1   30, 2013) (denying preliminary injunction, noting that "the immediate action Plaintiff

2   seeks is not to force the company to file disclosures, but to put Plaintiff in charge of the

3   company.  Plaintiff's requested injunction would deprive [current shareholders] of the

4   right to vote their shares").  A delay of the 2015 annual meeting will deprive current

5   company shareholders of a timely vote on who should run the company, thereby

6   interfering with the mechanism ensuring that American Apparel continues to be managed

7   in the way that *current* shareholders see fit.

8            Furthermore, by seeking a re-vote of the 2014 elections and a delay of the 2015

9   elections, Plaintiffs are impermissibly seeking *class-wide* relief despite *not* having brought

10  a class action, in violation of Federal Rule of Civil Procedure 23.  See Zepeda v. INS, 753

11  F.2d 719, 728 n.1 (9th Cir. 1985) ("Without a properly certified class, a court cannot grant

12  relief on a class-wide basis.").  This is also fundamentally unfair, because American

13  Apparel shareholders may *not* want the relief plaintiffs seek.  As this court knows, the

14  related and dismissed shareholder derivative lawsuit pending in this Court complains that

15  the Board did not act to *fire* Charney *soon enough*, whereas Plaintiffs here by virtue of

16  this lawsuit seek to bring him back.  In deciding whether injunctive relief should issue, the

17  Court must assess what is in the best interests, not of the named Plaintiffs, but American

18  Apparel's shareholders.  See W. Dist. Council of Lumber Prod. & Indus. Workers v. La.

19  Pac. Corp., 892 F.2d 1412, 1416 (9th Cir. 1989) ("[W]e have the power to undo the

20  election if the proxy solicitation violated Section 14(a) of the Securities Exchange Act *and*

21  *such relief is in the best interests of the shareholders*." (emphasis added)).

22           Third, an injunction could possibly result in allowing Charney to regain control of

23  the company, which is precisely why Charney's accomplices have sought this terribly

24  flawed relief.  Charney was terminated *for cause* after an extensive independent committee

25  investigation advised by legal counsel that revealed significant personal misconduct and

26  financial impropriety by Charney.  Among other reasons, the Board terminated Charney

27  for cause after an investigation into (1) awarding improper severance packages and

28  bonuses to employees; (2) potential failure to supervise and prevent his subordinates from

1  posting false, defamatory, and impersonating material on the internet targeting women

2  who had accused Mr. Charney of sexual harassment; (3) violations of American Apparel's

3  sexual harassment and anti-discrimination policies; (4) misuse of corporate assets; and (5)

4  allegations of harassment, some of which gave rise to lawsuits and arbitrations.  (See

5  Smith Decl. Ex. 1.)  The SEC has also issued an order of investigation with respect to

6  whether there were violations of federal securities laws during Charney's tenure as CEO.

7  (See id. Ex. 3.)  It would therefore be harmful for the company and its shareholders if

8  Charney comes back, and that must be taken into account in considering whether equitable

9  relief should be granted.  See W. Dist. Council, 892 F.2d at 1416 (stating injunctive relief

10  for disclosure violation must be "in the best interests of the shareholders").

11       Notably, Charney's declaration supporting Plaintiffs' motion, among other things, is

12  a breach of the July 9, 2014 Standstill Agreement between him, the Company, and

13  Standard General because the agreement prevents him from "***seek[ing] the removal of any***

14  ***member of the Board***"[.]  Given Charney's ties to the Plaintiffs and the fact that he

15  submitted a declaration in support of their motion, he is seeking the removal of Danziger,

16  Mayer, and potentially Greene's successor in violation of the Standstill Agreement in his

17  desperate attempt to regain power.  This is yet another reason why the equities weigh

18  heavily ***against*** any injunction.

19  **V.**    **CONCLUSION**

20       The Court should deny Plaintiffs' Motion.[13]

21

22

23

---

24  [13] If the Court is inclined to issue injunctive relief (and it should not), such relief may not issue unless Plaintiffs post a substantial bond.  Federal Rule of Civil Procedure 65(c)

25  provides that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages

26  sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); Wang v. Silver Wing Chinese Rest., No. 5:05 CV 4119, 2009 WL 1033440, at *2

27  (N.D. Cal. Apr. 16, 2009) (bonds are mandatory).  If necessary, a bond should be equal to the cost from (1) having to issue corrective proxy statements; (2) holding a revote of the

28  2014 director elections, and (3) having to postpone the 2015 annual meeting, such as reservation cancellation fees and the cost to notify shareholders of the postponement.

1    DATED: May 11, 2015

2                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                     By:  _____ /s/ Peter B. Morrison _____
3                                          Peter B. Morrison
                           Attorneys for Defendant American Apparel, Inc.

4                                          JONES DAY
                     By:  _____ /s/ Eric Landau _____
5                                          Eric Landau
                           Attorneys for the Individual Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
749823-LACSR01A - MSW